You may proceed. Yes, okay. Thank you, Your Honor. May it please the Court, I'm Jay Muller on behalf of the defendant, Mr. Rather. I'd like to reserve about half of my time for rebuttal. All right. I wrote my client about eight years ago and said, congratulations, you have won on appeal. It was an unpublished decision about an obscure statute, PC 529, subdivision 3, the so-called false impersonation statute. The Cal Supreme Court had not discussed this statute since the late 19th century, I think 1899. A few years before, in 1990, a court of appeal specifically held that the statute had a specific intent. And it relied on a 40-year-old case, the only other case that ever discussed this statute. And so the court of appeal applied what it said was well-established law and overturned the conviction. To my great surprise, the Cal Supreme Court granted review in the case to deal with this statute. Now, I am not here contesting the interpretation of the Cal Supreme Court with respect to the statute. As Judge Hall explained, that's up to the State courts. I'm only focusing on one sentence. The State Supreme Court dismissed my Bowie claim in one sentence, and that's the claim that I believe is an unreasonable interpretation of facts and law and contrary to well-established But I do think that the briefs, the supplemental brief, the reply brief, the opening brief, all the briefs have adequately and exhaustively discussed that issue. I don't think I can say anything else about it. The second issue is that the DA didn't spring this obscure statute on the defendant until after the parties had rested and Mr. Raffert had testified. And the record shows that this took the defense counsel in the case completely by surprise. And, of course, Mr. Raffert also said it took him by surprise. And based on what he testified in the case, it would look like he did not have an idea about this theory because he basically confessed to it on the stand. Although I want to say for the first time that, you know, that I think this — you know, I think he misspoke. I think he was trying to explain that had he gave the photo ID with the picture of the guy who didn't look anything like him, along with the check written in the guy's name, he says in an innocent way. Now, the jury in the case appeared to believe him because on the two theories that required a bad intent, they found him, one, not guilty, and one, you know, they hung. So I think even if you say that somehow he had constructive notice when he took the stand that they were going to spring this theory on him, I mean, even if he could say that in light of the fact that I'm sure that 99 percent of the people in this State have no idea that a statute called false impersonation is a felony. But even aside from that, how could he possibly have known that the State supreme court would have changed the only case law in the last 100 years that construed the statute? And I think if he had known about this statute, there was things he could have done. If the lawyer hadn't had mental problems and drinking problems and was totally consumed with his first murder case, that, you know, that he might have known that and have advised him, it would not be a good idea to confess on the stand to doing this crime just in case the State supreme court changes its mind on the specific intent issue. Which gets us to the third issue, which is the defense counsel in this case. I think, I mean, he did a decent job on getting him off, but it was a pure victory if there ever was a pure victory. Did you want to reserve the remaining time? I will just say one more thing, or a couple more things. So I do think that when you look at what Mr. Smith actually did at the closing argument in the case was when he called Mr. Rather a pathetic thing. I don't think that helped. And I don't so anyway, the long and the short of it is that 25 years of life is a long time for using an ID to try to cash a check. The courts so far have disagreed. I hope that this panel sees it differently. I'd like to write my, I'd like to be able to write him again and say you've won. And so I thank the court. Good morning, Your Honors. Richard S. Moskowitz, Deputy Attorney General, on behalf of Respondent. May it please the Court. I don't have a tremendous amount to say here other than to compliment my colleague for doing an excellent job of briefing the case and for representing his client at all levels. But I respectfully disagree with him about the bottom line here for a number of reasons, almost all of which have been expressed in my briefs. I would like to, as I was going through and preparing, there didn't seem to be a lot to say here that hasn't already been covered in the briefs. But I would like to highlight a couple of points. There are two cases which, to my mind, have been cited by the parties which really control the outcome here, at least with respect to the due process slash buoy claim. The first of those cases is Rogers v. Tennessee. In that one, we had a situation where the Tennessee Supreme Court abolished the common law so-called year-in-a-day rule with respect to murder. And that resulted in a defendant who previously could have expected to be acquitted of murder on the basis of this rule to be convicted. And in spite of the fact that the rule had been around for a long time and had been embraced by the Tennessee Supreme Court on a number of prior occasions, the U.S. Supreme Court held that the Tennessee Court's decision was foreseeable and did not constitute a due process violation. The second case was Hagen v. Kaspari. In that one, there was a state Supreme Court decision that overruled a lower state court, state appellate court. And the Eighth Circuit in that one said that a state Supreme Court overruling a lower state court is rarely, if ever, going to be unforeseeable. Now, applying those two cases to our situation, we're similar to Rogers in that the decision by the California Supreme Court removed a narrowing construction that had been placed on otherwise unambiguous statutory language. It's similar to Hagen in that the state Supreme Court overruled not its own precedent but that of a lower state court. And I'd also point out that unlike... I mean, I guess the result is that every time you go to trial, it's foreseeable that whatever statute and case law interpretation is on the books, that the state Supreme Court could change anything, basically. Well, I think... I mean, that's kind of the bottom line is what you're telling us, I think. I think that's a fair statement. There may be the very rare exception. If you have 15 or 20 published intermediate court decisions which unanimously say the same thing and they cover the entire geographic extent of the state or in the case of a federal issue, cover all or almost all of the circuits, then you might, in effect, have a rule that's pretty well entrenched. But that's not the situation here. We had one... But this is a fairly obscure statute that maybe, you know, there's no reason to have it litigated up and down the courts of appeals and the Supreme Court in the past. It seemed that the only construction of it was the one that both sides applied and the prosecution argued for in this case. I realize they didn't ask for a specific intent, and the Wittgen and Epstein treatise at the time also said that this was the law. It was a specific intent crime, and Wittgen's considered a well-known authority on California law. I mean, I relied on Wittgen a lot when I was in practice. Your Honor, I've... I'm sorry. Go ahead. Go ahead. Well, I was just going to say I've relied on Wittgen on many occasions myself. But I think we all learned in law school that the definitive expositor of a state's law is the Supreme Court of that state. And the Wittgen treatise did nothing more. It didn't editorialize. It didn't analyze. It didn't critique what the lower court had done in the Robertson case, which is what my opponent relied on in the court below and what the court's talking about here. They simply set out more or less a verbatim summary of what that court had held. Anyone with all due respect to Professor Wittgen could have done the same thing. Well, I guess the other thing I find somewhat persuasive in this case is that the intermediate opinion that reversed the conviction was written by the second district, and it was written by Judge Earl Johnson, I believe, who's also considered well-respected and very knowledgeable about California criminal law. That's true, Your Honor. And there was also a dissent in that case by Judge Woods, Justice Woods, who I believe is equally well-respected. Counsel did bring to our attention and yours through the 28J letter of this other California statute where sort of the same thing happened. When it went to the Supreme Court, albeit it was a murder case, the California Supreme Court basically turned upside down what had been the previous expectation, and the Ninth Circuit deemed that to be unforeseeable, which leads me, I guess, to my question. How is it you think we benchmark whether something is foreseeable or unforeseeable? Well, that's an excellent question. That really is, I think, the bottom line, or as your colleague, Judge Kaczynski, would say, the meat of the coconut. Right. I prefer the bottom line. Fair enough. But foreseeable, the Supreme Court, the U.S. Supreme Court, to my knowledge, has not placed a gloss on the word foreseeable in this context. So we're kind of in a position where we have to go with we know it when we see it. But in this situation, what we had was one intermediate court of appeal giving its take on a statute whose language was otherwise completely unambiguous. And, in fact, the unambiguous nature of the statute was clear in the direction of saying that specific intent, it didn't say anything about specific intent. And so, at most, the Robertson case would have created an ambiguity where none existed before. And all the courts, including this court in the Clark case, which Your Honor pointed out, have said that the existence of an ambiguity of that kind and the Supreme Court's, a State Supreme Court's resolution of that ambiguity in a manner that does not favor the defendant, does not amount to a due process violation. And I would cite, that's in the Clark case itself at page 912, and it cites another Ninth Circuit case called McSherry v. Block, 880 F. Second, 1049 at 1052. And I'd also point out the practical aspect to this, that if one were to adopt the interpretation of Bowie that's being advocated by the petitioner in this case, there would be considerable implications of that for the federal system as well. What it would mean is that in federal prosecutions, if you have once an issue of first impression regarding the interpretation of a federal criminal statute, would be decided by a federal court of appeals from somewhere back east in some distant part of the country. All of a sudden now, that rule, that interpretation, would suddenly become entrenched in the entire country and every circuit, including this one, would be obliged to follow that at the risk of creating a due process violation for the federal defendant. I have one question. I might just add, before you have your question, that wouldn't actually inert because we're not bound by the law of the other circuits. But go ahead. Sorry. Wait. Your time's up, and we are moving rapidly today. But I do have to ask you, what is the last reasoned statement by the state courts on the fair notice issue? I believe that would be the decision by the court of appeal. Did they reach that? I believe they did, Your Honor. I would have to look at the exact page number. I can get it out. Because the Supreme Court didn't reach it? The Supreme Court did not reach it. The Supreme Court granted review solely on the Bowie issue. Right. And the court of appeals statement on fair notice was what? The court of appeal basically said, as we've said and as the federal district court said, that Mr. Rathert was given notice by virtue of evidence that was presented during a preliminary hearing, argument that was given by the prosecution at the preliminary hearing, and as evidenced by arguments that Mr. Rathert's counsel himself raised during closing argument at the preliminary hearing and in various pretrial motions. Thank you. Thank you. Thank you, Your Honors. I just want to say that, you know, counsel's interpretation of Bowie would basically make a dead law. I mean, it's so extreme to say that it was foreseeable that the Cal Supreme Court would grant review in this case and then overturn the only case that spoke about the statute in the last 100 years. And then I don't. I do not read the court of appeal decision as saying that, as rejecting the fair notice claim. In fact, it expressly says we need not consider each of appellant's claims because we conclude it was prejudicial error not to instruct the jury on the intent requirement for a conviction of burglary while committing false impersonation. So this court didn't reach it. So are we to did was the issue raised to the trial court, fair notice? It was raised in my appeal. I'm pretty. Well, no, in your appeal, but to the court of appeal. But the court of appeal didn't address it. So I'm looking for the last reason to suggest that. I see, yes. So then after the State Supreme Court overturned us on the issue that we had won, they sent it back to the court of appeal, and then the court of appeal affirmed. And then in that, so in the second opinion of the court of appeal, I'm pretty sure they discussed the fair notice issue. They would have had to, but I'm going to go back and look. Exactly, because then when I went to a district court on the issue, there was never a question about it and not been raised in the State courts. And what was fascinating about the second opinion of the court of appeal is it went, well, there's no ineffective assistance of a counsel here because it was not foreseeable that the State Supreme Court would overturn, you know, the two cases in the last 100 years that have dealt with the statute. And so I'm in a place where, well, there's no IC, IAC, because it's not foreseeable. And then my counsel here is saying there's no buoy there because it was foreseeable. And I think a catch-22 is, you know, like that, is not just. Thank you. Thank you. Thank you both, counsel, for your arguments, also for your professionalism. I know it's a difficult case.
judges: Hall, McKeown, Wardlaw